# IN THE UNITED STATES DISTRICT COURT FOR
# THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| YILDIRIM AKSOY, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 11 CV 5798 |
| ) | |
| v. ) | Hon. Charles R. Norgle |
| ) | |
| CHICAGO POLICE SERGEANT ) | |
| MORENO, et al., ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Plaintiff Yildirim Aksoy ("Aksoy") sues Defendants Chicago Police Department Sergeants Raul Moreno ("Sergeant Moreno") and Willard Wright ("Sergeant Wright") (collectively, the "CPD Defendants") for false arrest under § 1983, in violation of the Fourth and Fourteenth Amendments, and for state-law malicious prosecution. Aksoy also sues the CPD Defendants and Stephen Kurkjian ("Kurkjian") for civil conspiracy under 42 U.S.C. § 1983, in violation of the Fourth and Fourteenth Amendments. In addition, Aksoy sues Kurkjian for state-law civil battery. Before the Court is the CPD Defendants' motion for summary judgment. For the following reasons, the motion is granted. The Court relinquishes jurisdiction over the remaining state-law civil battery claim against Kurkjian.

## I. BACKGROUND

### A. Local Rule 56.1

The Court has broad discretion "to require strict compliance with its local rules governing summary judgment." Modrowski v. Pigatto, 712 F.3d 1166, 1169 (7th Cir. 2013) (internal quotation marks and citation omitted). Local Rule 56.1 is designed to conserve judicial

time and resources. See Bordelon v. Chi. Sch. Reform Bd. of Trs., 233 F.3d 524, 527 (7th Cir. 2000) ("These rules assist the court by organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side proposed to prove a disputed fact with admissible evidence." (internal quotation marks and citation omitted)). Pursuant to Local Rule 56.1, a litigant opposing a motion for summary judgment must file "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." N.D. Ill. LR 56.1(b)(3)(B). "Local Rule 56.1's enforcement provision provides that when a responding party's statement fails to controvert the facts as set forth in the moving party's statement in the manner dictated by the rule, those facts shall be deemed admitted for purposes of the motion." Smith v. Lamz, 321 F.3d 680, 683 (7th Cir. 2003) (citing N.D. Ill. LR 56.1.(b)(3)(C)).

Here, many of Aksoy's submissions do not comply with the requirements of the Local Rule. For example, Aksoy denies, in part, a substantial number of the CPD Defendants' statements of material fact without evidentiary support in the record. "An answer that does not deny the allegations in the numbered paragraph with citations to supporting evidence in the record constitutes an admission." Jupiter Aluminum Corp. v. Home Ins. Co., 225 F.3d 868, 871 (7th Cir. 2000) (internal quotation marks and citation omitted). In addition, many of Aksoy's responses are improper to the extent they are conclusory, argumentative, lack foundation, or otherwise include additional facts. See Cichon v. Exelon Generation Co., 401 F.3d 803, 809 (7th Cir. 2005) ("Local Rule 56.1 *requires specifically* that a litigant seeking to oppose a motion for summary judgment file a response that contains a separate 'statement . . . of any additional facts that require the denial of summary judgment.'" (quoting N.D. Ill. LR 56.1(b)(3)(C) (additional

citations omitted)); Menasha Corp. v. News Am. Mktg. In-Store, Inc., 238 F.Supp.2d 1024, 1029 (N.D. Ill. 2003) ("[T]he Court will disregard all argumentative, conclusory, unsupported or otherwise non-conforming portions of Menasha's 'Statement of Material Facts under L.R. 56.1.'"). All material facts submitted by the CPD Defendants and not properly contested or controverted by Aksoy are deemed admitted. Finally, Aksoy's proposed statement of additional facts is deficient to the extent that the record citations do not support the facts asserted or the facts are based on inadmissible hearsay. See N.D. Ill. LR 56.1(b)(3)(C); Bryant v. Bd. of Educ., Dist. 228, 347 F. App'x 250, 253 (7th Cir. 2009) (non-precedential opinion) (citing Cichon, 401 F.3d at 809-10).

## B. Facts[1]

Following a physical altercation between neighbors over noise, Aksoy was arrested for misdemeanor battery. Aksoy lived in a condominium on the first floor of the building located at 3516 North Lawndale Avenue, Chicago, Illinois. Kurkjian and his family lived in a condominium directly above him. On the morning of April 8, 2010, Officer Robert Braun ("Officer Braun") was dispatched to a call regarding a disturbance at 3516 North Lawndale Avenue, Chicago, Illinois. Officer Braun was the first officer to arrive at the scene where he found Aksoy and Kurkjian in a loud verbal argument in the hallway of their building. Officer Braun then ordered both men outside and separated them. Officer Braun was told by a woman at the scene that Kurkjian was the brother-in-law of Sergeant Moreno. The woman told Officer Braun that Sergeant Moreno wanted to talk to him on the phone. Officer Braun testified that he stated, "I don't know Sergeant Moreno and I'm not talking to anybody on the phone." Pl.'s

---

[1] The Court takes the undisputed material facts from the parties' Local Rule 56.1 statements and supporting materials, and notes properly disputed facts within the text. Although the Court "need consider only the cited materials," it "may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

3

56.1(b)(3)(C) Statement of Additional Facts Ex. E, at p 34:3-5.  Officer Braun observed injuries on both Aksoy and Kurkjian.  He testified that both men admitted to physical contact with each other: one kicked the other in the chest, and one kicked the other in the groin.  Officer Braun further testified that he requested that a supervisor come to the scene when he determined that he was not going to be able to resolve the situation amicably.

Sergeant Wright received a call from the police dispatch and proceeded to Aksoy and Kurkjian's building.  He arrived approximately thirty minutes after Officer Braun, who was already on the scene with Officer Hunger.  Upon Sergeant Wright's arrival at the scene, one of the officers immediately conveyed to him—while he was still seated in his car and before any other facts of the case were told to him—that Kurkjian was related to Sergeant Moreno.  Sergeant Wright knew Sergeant Moreno prior to April 8, 2010 as a professional acquaintance; and, he believed that for a short period of time they may have worked the third watch together.  Nevertheless, Sergeant Wright testified that the fact that Sergeant Moreno was related to Kurkjian had no bearing on the case; rather, he wanted to know why he was there and what the facts of the case were.

Sergeant Wright testified that one of the officers informed him of the following: that there was a "battery between two subjects," Statement of Uncontested Material Facts in Supp. of Sergeant Wright & Moreno's Mot. for Summ. J. ¶ 27, that Aksoy lived below Kurkjian, that there had been a history of complaints about noise problems coming from above, that Aksoy had gone up to complain about the noise and either punched or kicked Kurkjian in the chest, that he had pushed Aksoy back in self-defense, and that a babysitter was present in Kurkjian's condominium with his one year-old child at the time of the incident.  Sergeant Wright also testified that one of the officers told him that when Aksoy was interviewed, he claimed to have

been pushed and appeared aggressive and loud. Aksoy, however, denies that he was loud or aggressive while he was being interviewed by the officers.

As part of the investigation, Sergeant Wright asked one of the officers to contact dispatch to find out the chronology of the phone calls placed to 9-1-1. Sergeant Wright testified that in his experience as a police officer and a sergeant, the party who is the aggressor often calls 9-1-1 after the party who is the victim in an effort to refute the victim's version of events. Sergeant Wright learned from dispatch that the first call to 9-1-1 was placed by someone calling on behalf of Kurkjian, either the babysitter or Kurkjian's wife. Aksoy called 9-1-1 after someone called on behalf of Kurkjian.

Sergeant Wright also spoke with Kurkjian, who stated that his neighbor, Aksoy, had come upstairs, knocked on his door, and struck him. Kurkjian grabbed his chest and showed the officers marks on his face and neck that he said he received during the incident. Sergeant Wright observed physical injuries on Kurkjian, including scratches on his head. Kurkjian wanted to press charges against Aksoy, and signed a criminal complaint against him for misdemeanor battery. The criminal complaint states that Aksoy kicked him in the chest and scratched his face. On the other hand, Aksoy did not want to press charges against Kurkjian.

Based on his professional experience, the information he obtained from Officers Braun and Hunger regarding the incident, the chronology of the 9-1-1 calls, and the injuries he observed on Kurkjian, Sergeant Wright made the decision that Aksoy was the aggressor and that there was probable cause for Aksoy's arrest.

On the morning of April 8, 2010, Sergeant Moreno was at home and off duty when he received a phone call from his sister, who is married to Kurkjian. Sergeant Moreno's sister told him that she was driving home because her neighbor, Aksoy, had "beat up on" her husband.

Statement of Uncontested Material Facts in Supp. of Sergeant Wright & Moreno's Mot. for Summ. J. ¶ 47. Sergeant Moreno told her to call 9-1-1. Several minutes later, Sergeant Moreno received a second call from his sister, wherein she stated that Aksoy had beat up her husband, went upstairs and kicked him, and that police were on the scene interviewing Aksoy and Kurkjian. Sergeant Moreno's sister also told him that nothing was being done. Sergeant Moreno then called the 17th District police station. The parties dispute the purpose of the call: whether Sergeant Moreno called the police station to request that a sergeant be sent to the scene or whether he called simply to find out if a sergeant had been sent to the scene. The CPD Defendants further submit that Sergeant Moreno testified that he was told that a sergeant had already been assigned. However, as Aksoy argues, Sergeant Moreno's testimony about this conversation is inadmissible hearsay, and it will not be considered. See Fed. R. Civ. P. 56(c)(2); Cortezano v. Salin Bank & Trust Co., 680 F.3d 936, 942 (7th Cir. 2012). Sergeant Moreno identified himself as a Chicago Police Sergeant because he knew that if he did so, he would be given information about the case involving his brother-in-law. Sergeant Moreno knew that the people who typically answer the phones are desk officers who are subordinate to him, and would honor his requests as a sergeant.

**C. Procedural History**

On August 22, 2011, Aksoy initiated this lawsuit against the City of Chicago, the CPD Defendants and Kurkjian. After the City of Chicago and the CPD Defendants filed motions for summary judgment, Aksoy filed a motion for leave to file an amended complaint. Aksoy filed a stipulation to voluntarily dismiss the City of Chicago as a defendant on July 8, 2013. In his response brief to the CPD Defendants' motion for summary judgment, Aksoy addresses only those counts that remained in the putative amended complaint, false arrest and civil conspiracy.

6

The motion for leave to file an amended complaint, however, was denied on July 12, 2013. The instant motion for summary judgment is fully briefed and before the Court.

## II. DISCUSSION

### A. Standard of Decision

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Majors v. Gen. Elec. Co., 714 F.3d 527, 532 (7th Cir. 2013). "Factual disputes are genuine 'only if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the evidence presented,' and they are material only if their resolution might change the suit's outcome under the governing law." Maniscalco v. Simon, 712 F.3d 1139, 1143 (7th Cir. 2013) (quoting Stokes v. Bd. of Educ. of the City of Chi., 599 F.3d 617, 619 (7th Cir. 2010)). Thus, "[a] genuine issue of material fact exists when 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Wells v. Coker, 707 F.3d 756, 760 (7th Cir. 2013) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The Court construes all facts and draws all reasonable inferences in the light most favorable to the nonmoving party. Maniscalco, 712 F.3d at 1143 (citing Spivey v. Adaptive Mktg. LLC, 622 F.3d 816, 822 (7th Cir. 2010)).

However, simply showing that there is "some metaphysical doubt as to the material facts" will not defeat a motion for summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (citations omitted); see also Jones v. City of Elkhart, Ind., 737 F.3d 1107, 1113 (7th Cir. 2013) ("In submitting these evidentiary materials, Jones 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" (quoting Siegel v. Shell Oil Co., 612 F.3d 932, 937 (7th Cir. 2010)). Rather, the nonmoving party "must

present definite, competent evidence in rebuttal." Jones, 737 F.3d at 1113 (internal quotation marks and citation omitted). "Summary judgment is appropriate if the nonmoving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Majors, 714 F.3d at 532-33 (quoting Ellis v. CCA of Tenn. LLC, 650 F.3d 640, 646 (7th Cir. 2011)).

**B. False Arrest**

"The existence of probable cause to arrest is an absolute defense to any § 1983 claim against a police officer for false arrest or false imprisonment." Abbott v. Sangamon Cnty., Ill., 705 F.3d 706, 713-14 (7th Cir. 2013) (citing Mustafa v. City of Chi., 442 F.3d 544, 547 (7th Cir. 2006)). Aksoy argues first, that he did not commit the offense of battery; and second, that probable cause did not exist to arrest him. Under Illinois law, a person commits the offense of battery when he "knowingly without legal justification by any means (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provocative nature with an individual." 720 Ill. Comp. Stat. 5/12-3.

As an initial matter, the Court notes that "[t]he validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest." Michigan v. DeFellipp, 443 U.S. 31, 36 (1979); see also United States v. Douglass, 467 F.3d 621, 624 (7th Cir. 2006). The only issue therefore is whether probable cause existed to arrest Aksoy. "Probable cause exists if at the time of the arrest, the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Jones, 737 F.3d at 1114 (internal quotation marks and citation omitted). "Probable

8

cause is a fluid concept that relies on the common-sense judgment of the officers based on the totality of the circumstances." Id. (internal quotation marks, ellipsis and citation omitted). "The sufficiency of the evidence for a determination of probable cause need not be enough to support a conviction or even enough to show that the officer's belief is more likely true than false." Matthews v. City of E. St. Louis, 675 F.3d 703, 706 (7th Cir. 2012) (citing Woods v. City of Chi., 234 F.3d 979, 996 (7th Cir. 2000)).

Aksoy argues that Sergeant Wright deliberately avoided knowledge of certain facts when he ordered his arrest so as to effectuate the "implicit goal" to side with Kurkjian—the relative of Sergeant Moreno—in the dispute. Pl.'s Mem. in Opp'n to Defs.' Mot. for Summ. J. 5. However, even accepting that Sergeant Wright had a bad motive for ordering Aksoy's arrest, such evidence is immaterial because the existence of probable cause precludes Aksoy's § 1983 claim for unlawful arrest. Sheik-Abdi v. McClellan, 37 F.3d 1240, 1247 (7th Cir. 1994). "Rather than trying to divine whether or not the officers acted with 'animus,'" the Court is "tasked with reviewing 'the facts as they would have appeared to a reasonable person *in the position of the arresting officer*.'" Fitzgerald v. Santoro, 707 F.3d 725, 732 (7th Cir. 2013) (quoting Carmichael v. Vill. of Palatine, Ill., 605 F.3d 451, 457 (7th Cir. 2010)). Indeed, it is well-established that "'an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause.'" Id. (quoting Devenpeck v. Alford, 543 U.S. 146, 153 (2004)).

Aksoy argues that the officers lacked probable cause to arrest him because Kurkjian was in fact the aggressor, who attacked him. But no evidence in the record suggests that Sergeant Wright had any reason to doubt the credibility of Kurkjian at the time of the arrest. It is undisputed that Sergeant Wright spoke with Kurkjian, who told him that Aksoy had come

upstairs, knocked on his door, and struck him. Indeed, Sergeant Wright observed physical injuries on Kurkjian, including scratches on his head. "So long as an officer reasonably believes the putative victim of or eyewitness to a crime is telling the truth, he may rely on the information provided to him by such persons in deciding to make an arrest, without having to conduct an independent investigation into their accounts." Williamson v. Curran, 714 F.3d 432, 441 (7th Cir. 2013) (citations omitted). "This is so even when the suspect denies an accusation of wrongdoing." Id. (citing Reynolds v. Jamison, 488 F.3d 756, 762 (7th Cir. 2007)). Moreover, "[w]hen acting on the complaint of a reasonably believable putative victim, an officer is under no constitutional obligation to exclude all suggestions that the witness or victim is not telling the truth." Reynolds, 488 F.3d at 762 (internal quotation marks and citation). Sergeant Wright was entitled to take Kurkjian at his word as to Aksoy's actions. Mustafa, 442 F.3d at 548.

Aksoy nonetheless argues that a reasonable officer would not have relied on Kurkjian's complaint. He contends that Sergeant Wright failed to conduct a proper investigation before arresting him. Specifically, Aksoy asserts that Sergeant Wright did not speak with him, and ignored physical evidence of his injuries and evidence that Kurkjian had later smashed his car windows. According to Aksoy, these facts would have undermined Sergeant Wright's theory that Kurkjian was the victim of a battery. This argument ignores the following undisputed facts: that when Sergeant Wright arrived on scene, he spoke with the responding officers who had interviewed Aksoy; that one of the officers related to him that Aksoy claimed to have been pushed, that there was a "battery between two subjects," Statement of Uncontested Material Facts in Supp. of Sergeant Wright & Moreno's Mot. for Summ. J. ¶ 27, that Aksoy lived below Kurkjian, that there had been a history of complaints about noise problems coming from above, that Aksoy had left his condominium on the first floor and had gone up to Kurkjian's

condominium on the second floor to complain about the noise, that when Kurkjian opened his door, Aksoy either punched or kicked Kurkjian in the chest, that Kurkjian had pushed Aksoy back in self-defense, and that a babysitter was present in Kurkjian's house with his one year-old child at the time of the incident; that Sergeant Wright spoke with Kurkjian; and that Kurkjian then signed the criminal complaint against Aksoy. Although a trier of fact would be entitled to believe that Aksoy was not loud or aggressive during his interview with the responding officer, this version of the interview, in light of the totality of the circumstances, does not create a genuine issue of material fact. Moreover, the fact that both men had visible injuries does not negate Kurkjian's credibility. Likewise, Aksoy's statement that Kurkjian smashed his car windows—moments after the confrontation ended—does not suggest that Kurkjian's account of the incident was incredible.

Sergeant Wright's investigation did not stop there, however. He also found out the chronology of the phone calls placed to 9-1-1: someone calling on behalf of Kurkjian placed the first call, either the babysitter or Kurkjian's wife, followed by Aksoy. Sergeant Wright testified that in his experience as a police officer and a sergeant, the party who is the aggressor often calls 9-1-1 after the party who is the victim in an effort to refute the victim's version of events. The Court finds that Sergeant Wright reasonably relied on a credible statement from Kurkjian that was supported by the totality of the circumstances. Contrary to Aksoy's assertion, there was sufficient probable cause to arrest him for battery, a misdemeanor.

Aksoy next contends that he observed an argument between the officers—which he admits he could not hear. Aksoy argues that this "paints a picture contrary to a unanimous view of investigating officers and Wright that probable cause ever existed." Pl.'s Mem. in Opp'n to Defs.' Mot. for Summ. J. 6. Whether all officers held a "unanimous view" that Aksoy should

11

have been arrested is of no moment. Indeed, Officer Braun testified that he called for a supervisor to assist him because he was unable to resolve the situation amicably on his own. It is undisputed that Sergeant Wright—not the responding officers—ultimately made the decision to arrest Aksoy. It is also undisputed that Kurkjian signed a criminal complaint against Aksoy for misdemeanor battery. In any event, it bears repeating that the standard governing the probable cause determination "is an objective one which asks what a reasonable person would be warranted in believing based on the facts known to the arresting officer, not what the arresting officer actually thought or what his motivation was." Williamson, 714 F.3d at 447 (citations omitted). The facts known to the responding officers and Sergeant Wright were sufficient to support a reasonable belief that Aksoy had committed a crime. Accordingly, summary judgment is appropriate on Aksoy's false arrest claim.

## C. Conspiracy

"[T]o establish § 1983 liability through a conspiracy theory, 'a plaintiff must demonstrate that: (1) a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights, and (2) those individual(s) were willful participant[s] in joint activity with the State or its agents.'" Lewis v. Mills, 677 F.3d 324, 333 (7th Cir. 2012) (quoting Reynolds, 488 F.3d at 764) (second alteration in original) (additional citation omitted). Here, Aksoy alleges that Sergeant Wright, Sergeant Moreno, and Kurkjian conspired to violate his constitutional rights by having him arrested without probable cause based upon Sergeant Moreno's familial relationship to Kurkjian.

Aksoy concedes that Sergeant Moreno never spoke to any of the officers who were on the scene or participated in his arrest, but nonetheless argues that circumstantial evidence supports his civil conspiracy claim. Specifically, Aksoy points out that Officer Braun was told on the

12

scene that Sergeant Moreno was on the phone and wanted to talk to him while the investigation was ongoing; that one of the officers relayed the nature of the relationship between Kurkjian and Sergeant Moreno to Sergeant Wright before he heard any of the facts of the dispute; and that Sergeant Moreno contacted the 17th District and, accepting Aksoy's version of the facts, requested that a sergeant be sent to the scene. These facts, however, are insufficient to connect Sergeant Moreno to the alleged conspiracy. That Sergeant Wright knew Sergeant Moreno prior to April 8, 2010 as a professional acquaintance is unremarkable and does not support a reasonable inference that he was part of a conspiracy against Aksoy. Moreover, it is undisputed that Sergeant Moreno first learned that Aksoy had been arrested when he spoke to his sister and Kurkjian and they told him that Kurkjian had signed a criminal complaint for Aksoy's arrest and that he was in fact arrested. It is also undisputed that Sergeant Moreno did not learn that Sergeant Wright was the sergeant who had been assigned to go to the scene until days after Aksoy's arrest. There is simply no evidence that Sergeant Wright, Sergeant Moreno, and Kurkjian reached any understanding, let alone an understanding to deprive Aksoy of his constitutional rights. Additionally, there is no evidence that these individuals willfully participated in joint activity of any sort. Aksoy's "conspiracy theory is entirely speculative." Maniscalco, 712 F.3d at 1145. Thus, summary judgment in favor of the CPD Defendants on Aksoy's civil conspiracy claim is appropriate.

### D. Malicious Prosecution

Finally, while Aksoy alleges a state-law malicious prosecution claim in his Complaint, he failed to defend it against the CPD Defendants' motion summary judgment. Aksoy's malicious prosecution claim is therefore deemed abandoned. See, e.g., Ienco v. Angarone, 429 F.3d 680,

684-85 (7th Cir. 2005). As such, the CPD Defendants' motion is granted. The Court need not address the CPD Defendants' remaining arguments.

## III. CONCLUSION

For the foregoing reasons, the CPD Defendants' motion is granted. Summary judgment is entered in favor of the CPD Defendants on all of Plaintiff's claims. Because no federal claims remain in this case, the Court, in its discretion, relinquishes jurisdiction over the remaining state-law civil battery claim against Kurkjian. See 28 U.S.C. § 1367(c)(3); see also Fields v. Wharrie, 740 F.3d 1107, 1110 (7th Cir. 2014) ("[W]e expected that with the federal claims dismissed the district judge would relinquish jurisdiction over the state law claims; for they were supplemental claims, which normally are dismissed when the federal claims to which they are supplemental drop out of the case before trial." (citations omitted)).

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATE: March 7, 2014